J-S24039-18
J-S24040-18
J-S24041-18
J-S24042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.A.D. AND M.B.D. | : | No. 1929 MDA 2017 |

Appeal from the Order Entered November 17, 2017
in the Court of Common Pleas of Cumberland County,
Juvenile Division at No(s):  CP-21-DP-0000153-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: L.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.A.D. AND M.B.D. | : | No. 1930 MDA 2017 |

Appeal from the Order Entered November 17, 2017
in the Court of Common Pleas of Cumberland County,
Juvenile Division at No(s):  CP-21-DP-154-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: L.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.A.D. AND M.B.D., NATURAL PARENTS | : | No. 1945 MDA 2017 |

Appeal from the Decree November 17, 2017
in the Court of Common Pleas of Cumberland County,
Orphans' Court at No(s):  128-Adopt-2017

J-S24039-18
J-S24040-18
J-S24041-18
J-S24042-18

| IN THE INTEREST OF: R.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.A.D. AND M.B.D., NATURAL PARENTS | : | No. 1946 MDA 2017 |

Appeal from the Decree November 17, 2017
in the Court of Common Pleas of Cumberland County,
Orphans' Court at No(s):  127-Adopt-2017

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 29, 2018**

D.A.D. (Father") and M.B.D. ("Mother") (collectively, "Parents") appeal from the Decrees and Orders entered on November 17, 2017, granting the Petitions filed by the Cumberland County Children and Youth Services ("CYS" or the "Agency") seeking to involuntarily terminate Father's and Mother's parental rights to their two minor female children, R.D. (born in June 2008), and L.D. (born in April 2015) (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511, and to change the Children's permanency

- 2 -

goals to adoption, pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  Parents' Counsel has filed with this Court a Motion for leave to withdraw as Parents' Counsel, and a brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967).  We grant Parents' Counsel leave to withdraw, and affirm the Orders and Decrees.

On August 3, 2017, the Agency filed Petitions to change the Children's permanency goals to adoption.  On November 7, 2017, the Agency filed Petitions for the termination of Parents' parental rights.  On November 17, 2017, the trial court conducted an evidentiary hearing on the Petitions.[2]  At the hearing, Mother was present and represented by Parents' Counsel, as was Father.  The legal counsel and GAL for the Children were present.

---

[1] On November 7, 2017, the trial court appointed Damian DeStefano, Esquire, as legal counsel for the Children, and Marylou Matas, Esquire, as the guardian *ad litem* ("GAL") for the Children.  **See In re: Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017) (initially filed on March 28, 2017).  In the same November 7, 2017 Order, the trial court appointed Robert Hawn, Jr., Esquire ("Parents' Counsel"), as counsel for Mother and Father, and Christopher Gleeson, Esquire, as Parents' Counsel to the prospective adoptive parents, T.F.-S. and D.S.  At the hearing on the termination/goal change Petitions, Attorney Matas and Attorney Amy J. Russo, from Attorney DeStefano's firm, actively conducted questioning of witnesses.

[2] The November 17, 2017 hearing also was a permanency review and addressed the Agency's Petition to change the permanency goal for the Children's older brother, D.D., to adoption.  N.T., 11/17/17, at 4.  D.D. is not a subject of this appeal.

The trial court set forth the factual background and procedural history of this appeal as follows:

> The Agency had been working with this family since April of 2015 because of concerns with their unsanitary home environment. On August 12, 2016, the [Children] and their brother, D.J.D. (D.O.B. February [] 2007), … had to be removed from the home because of the unsuitable living conditions.[FN1] Not only were there unsanitary living conditions and a profound cockroach infestation, but the family was also being evicted.
>
> The Children [and D.J.D.] resided briefly with their [p]aternal [g]randmother. However, when she could no longer serve as a resource, they were placed with their current foster family where they have continued to reside since August 22, 2016.[FN2]
>
> Shortly after the Children [and D.J.D.] were removed, the Parents were evicted from the home. On November 11, 2016, the Agency caseworker visited their new apartment and found that it was merely a twelve-feet-by-fifteen-feet (12 ft x 15 ft) room. It had an attached bathroom but did not have a refrigerator or cooking facilities. An air mattress was set up but it did not have sheets or blankets. The Parents continued to live in that "apartment" at the time of the hearing.
>
> The Parents did not begin participating in a parenting program until January 27, 2017. The initial phase was completed on April 5, 2017. The parenting educator concluded that the Parents would need to complete the next phase of the program before reunification could be accomplished. However, the next phase could not begin until the Parents obtained appropriate housing and addressed their mental health concerns. At the time of the termination hearing, those issues still needed to be addressed.[FN3]
>
> The Agency filed its Petition for the Termination of Parental Rights on November 7, 2017, almost fifteen (15) months after the [Children] had been placed. On November 17, 2017, [the trial court] held a hearing on the Petition. At the time of the termination hearing, the Parents had not complied with several of

- 4 -

the goals necessary for reunification. Furthermore, the reasons for the [Children's] removal from [Parents] care, *i.e.*, lack of appropriate housing and failure to adequately address their mental health issues, continued to exist.

The [Children] had been doing extremely well in their foster home. They had bonded with their foster parents as well as [the foster parents'] biological children. They love their foster family and their foster family loves them. While the [Children] enjoyed seeing their [Parents], they did not talk about them or ask to call them between visits. The foster mother was confident that any adverse reaction the [Children] might have to the termination of parental rights would be temporary. The foster parents stand ready to adopt them.

After hearing the evidence, [the trial court was] satisfied by clear and convincing evidence that grounds existed for the termination of parental rights as to the Children. In addition, [the trial court was] satisfied that that the termination of parental rights best suited the needs and welfare of the [Children].[FN4] Accordingly, [the trial court] entered [O]rders terminating parental rights so that the [Children] may be adopted by their foster parents[,] with whom they have formed a mutually strong and loving bond.

_____

[FN1] The Agency did not seek to terminate [Parents'] rights to D.J.D. because of his strong bond with them, as well as his lack of bond with the foster family.

[FN2] D.J.D. has since been moved into a home with a family member[,] while [Parents] continue to work on reunification.

[FN3] On September 19, 2017, thirteen (13) months after placement, [Parents] had contacted the Agency and stated that they had found a two-bedroom apartment. They wanted the Agency to approve it before they signed the lease. However, for various various valid reasons, the Agency concluded that the apartment would not be appropriate for reunification.

[FN4] On the other hand, D.J.D. has an unusually strong bond with [Parents] and paternal grandmother. Because of this, and the fact

- 5 -

that he did not develop a strong bond with the foster family, [the trial court] concluded that termination of [Parents'] rights would not serve his needs and welfare. He has since been placed in the home of his paternal great[-]aunt[,] while [Parents] work on reunification with him.

Trial Court Opinion (L.D.), 2/2/18, at 1-3; Trial Court Opinion (R.D.), 2/2/18, at 1-3 (footnotes in original).

After the conclusion of the hearing on November 17, 2017, the trial court determined that Father's and Mother's respective parental rights to the Children should be terminated under section 2511(a)(2), (5), (8), and (b) of the Adoption Act, and their permanency goals as to each child changed to adoption. On December 15, 2017, Parents filed Notices of appeal of the Decrees and Orders, and Concise Statements of errors complained of on appeal.

On March 7, 2018, Parents' Counsel filed a Motion to withdraw from the representation of Parents, and an **Anders** brief. In his **Anders** brief, Parents' Counsel raises the following issues on behalf of Parents:

> 1. Did the trial court abuse its discretion and commit an error of law when it found that [the Children's] permanent placement goals of reunification were neither appropriate, nor feasible and ordered goal changes to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S.[A.] § 6351(f)?
>
> 2. Did the trial court abuse its discretion and commit an error of law when it found that sufficient grounds existed for a termination of appellants' parental rights [to the Children], and when it failed to primarily consider the [C]hildren's developmental, physical and emotional needs and welfare, thus contravening sections 2511(a)

and 2511(b) of the Adoption Act, 23 Pa.C.S.[A.] §§ 2511(a) & 2511(b)?

*Anders* Brief at 4.

In *In re V.E.*, 611 A.2d 1267, 1274-75 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. "When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address Parents' Counsel's request to withdraw." *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004).

Pursuant to *Anders*, when Parents' Counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., Parents' Counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal. . .; and
>
> (3) furnish a copy of the brief to defendant and advise him of his right to retain new Parents' Counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*Id.* (citation omitted).

In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief

> (1)   provide a summary of the procedural history and facts, with citations to the record;

- 7 -

(2) refer to anything in the record that Parents' Counsel believes arguably supports the appeal;

(3) set forth Parents' Counsel's conclusion that the appeal is frivolous; and

(4) state Parents' Counsel's reasons for concluding that the appeal is frivolous. Parents' Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. With respect to the third requirement of *Anders*, that counsel inform the defendant/client of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005). "After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

Parents' Counsel has complied with each of the requirements of *Anders*. Parents' Counsel indicates that he conscientiously examined the record and determined that an appeal would be frivolous. Further, Parents' Counsel's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Finally, attached to Parents' Counsel's Motion for leave to withdraw is a copy of his letter to Parents. In compliance with

- 8 -

*Millisock*, the letter stated Parents' Counsel's intention to seek permission to withdraw, and advised Parents of their right to proceed *pro se* or retain alternate counsel. Accordingly, Parents' Counsel has complied with the procedural requirements for withdrawing from representation, and we will proceed with our own independent review.

In the *Anders* brief, Parents' Counsel claims that there is insufficient evidence to support the involuntary termination of Parents rights under section 2511(a)(2), (5), (8), and (b) of the Adoption Act, and the change of the permanency goal to adoption under section 6351 of the Juvenile Act. *Anders* Brief at 4, 10.[3] Parents' Counsel also claims that the trial court reached inconsistent conclusions with regard to the Children, as opposed to their older brother, and, in so doing, failed to preserve family unity, disregarding the purpose of the Juvenile Act set forth in section 6302 of the Juvenile Act. *Id.* at 10.

_____

[3] This Court has stated, "[o]nce counsel has satisfied the above requirements [for a motion to withdraw and *Anders* brief], it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (quoting *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa. Super. 2004)). *See Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (following *Goodwin*). Thus, we may address whether CYS established the grounds for the termination and the goal change to adoption as part of our independent review.

- 9 -

We will review the termination Decrees and goal change Orders together, as did the trial court in its Opinion. In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, … 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, … 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, … 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, … 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, … 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, … 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

- 10 -

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Although the trial court focused its discussion on section 2511(a)(2), (5), (8), and (b), together, we will discuss only section 2511(a)(2) and (b).

Section 2511(a)(2) and (b) provide, in relevant part, as follows:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *

  **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows:

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity.  The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

> ***In re Adoption of J.J.***, 515 A.2d 883, 891 (Pa. 1986) (*quoting* ***In re: William L.***, 383 A.2d 1228, 1239 (Pa. 1978).

***In re Adoption of S.P.***, 47 A.3d at 827.

- 12 -

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, … 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as

well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

> A parent's abuse and neglect are likewise a relevant part of this analysis:

>> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming the involuntary termination of parental rights, despite the existence of some bond, where placement with mother would be contrary to the child's best interests). "[A] parent's basic constitutional right to the custody and rearing of … [his or] her

child is converted, upon the failure to fulfill … parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

The trial court addressed the sufficiency of the evidence to support the termination under section 2511(a)(2)[4] and (b) together, as follows:

We were satisfied that the Agency met its burden ….

At the time we entered the orders terminating parental rights, the [Children] had been in placement for almost fifteen (15) consecutive months. In addition, the Parents had made very little progress in alleviating the conditions which led to placement. As the master found at the June 2017 Permanency Review:

Throughout the [C]hildren's 10 months of placement, little to no progress has been made toward alleviating the circumstances requiring the children's placement. Of primary concern is that [] [P]arents continue to display no understanding of how their mental health and need for parenting education contributed to the severe environmental conditions which ultimately necessitated removal. Their recent trauma, the loss of a child they were expecting, has added to their need for services and created additional risks highlighting the need for parenting education…. [] [P]arents' desire for privacy as they process their loss is understandable, but difficult to resolve with their public displays of grief, such as carrying and cuddling a teddy bear seemingly as the embodiment of the child…. Parenting services through Skills cannot continue

---

[4] The trial court's discussion addressed termination under subsections (5) and (8) as well. However, we set forth the trial court's discussion, as applied to subsection (2).

- 15 -

until progress is made on their housing needs. After completing TIPS[5] parenting education, both parents remained assessed as in ["]severe need for a continuation of parenting services.["][FN]

At the time of the hearing on the petitions, the Parents still had not obtained appropriate housing, nor had they adequately addressed their mental health needs. Furthermore, they still needed extensive parenting services. Accordingly, we were satisfied by clear and convincing evidence that more than twelve (12) months had passed since the [Children] were placed and that the conditions which led to placement continued to exist. The only remaining issue was whether the termination of parental rights would best serve the needs and welfare of the [Children].

Pennsylvania case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to determine [*sic*] whether parental rights should be terminated. ***See*** 23 Pa.C.S.A. § 2511; ***In re R.J.S.***, 901 A.2d 502, 508 (Pa. Super. 2006). The initial focus is on the conduct of the parent. The court will engage in the determination of the needs and welfare of the child under the standard of best interests of the child only if the court first determines that the parent's conduct warrants termination of parental rights. ***Id.*** One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. ***Id.***

[The court] found little to no evidence that severing the ties between [] Parents and the [Children] would have any detrimental effect on the [Children]. Furthermore, we were satisfied that if there was any adverse effect, it could be easily overcome by the love and support of their foster family. The [Children] are an integral part of their foster family. They are thriving in the home and their foster family wants to adopt them. Consequently, we were satisfied that the needs and welfare of the [Children] would

---

5 The program, Teaching Important Parenting Skills, offers parenting education.

- 16 -

> be best served by terminating parental rights and allowing them to be adopted by their foster parents.

_____

[FN] CYS Exhibit 1, June 26, 2017 Permanency Review.

Trial Court Opinion, 2/2/18, at 4-6 (one footnote in original, one footnote added).

After a careful review of the record, we find that termination of Parents' parental rights to the Children was warranted pursuant to section 2511(a)(2), as Parents clearly lack parental capacity, and the evidence showed that they will be unable to remedy that situation within a reasonable period of time, if ever. The competent, clear and convincing evidence supports the termination of Parents' parental rights under section 2511(b), as termination of their rights will best serve the Children's needs and welfare, and will not harm the Children by severing any bond that they have with Parents. We, therefore, discern no abuse of the trial court's discretion in terminating Parents' parental rights to the Children under section 2511(a)(2) and (b). *In re Adoption of S.P.*, 47 A.3d at 826-27.

Finally, we address the change of the permanency goal for the Children to adoption. Our standard of review in a dependency case follows:

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, … 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of: L.Z.*, *A Minor Child*, 111 A.3d 1164, 1174 (Pa. 2015).

Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child. *See* 23 Pa.C.S.A. § 6351(e), (f), (f.1), (g).

When considering a petition for goal change for a dependent child, the trial court considers

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S.A. § 6351(f)).

Additionally, Section 6351(f.1) requires the trial court to make a determination regarding the child's placement goal:

> **(f.1) Additional determination.**—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

*** 

- 18 -

> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1).

On the issue of a placement goal change, this Court has explained that,

> [w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, ... 574 A.2d 690, 691 ([Pa. Super.] 1990) (noting that "[o]nce a child is adjudicated dependent ... the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S.[A.] § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re E.F.V.*, ... 461 A.2d 1263, 1267 ([Pa. Super.]1983) (citation omitted).

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006).

Here, competent evidence in the record supports the trial court's change of the permanency goals for the Children to adoption as best suited to the safety, protection and physical, mental and moral welfare of the Children pursuant to the considerations set forth in the Juvenile Act, 42 Pa.C.S.A. § 6351.

Based on the foregoing discussion in the trial court Opinion, the record reflects no abuse of the discretion by the trial court in terminating Parents'

parental rights to the Children under section 2511(a)(2) and (b) of the Adoption Act, and changing their permanency goals to adoption under section 6351 of the Juvenile Act. *In re Adoption of S.P.*, 47 A.3d at 826-27. We, therefore, affirm the termination Decrees and goal change Orders. Moreover, after conducting our independent review, we agree with Parents' Counsel that Parents' appeals are frivolous, and grant the Motion for leave to withdraw filed by Parents' Counsel.

Decrees and Orders affirmed. Parents' Counsel's Motion for leave to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/29/18

- 20 -